## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **Christopher Mohler,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 1:21-cv-01319-TCB** |
| | ) | |
| **ANTHEM BLUE CROSS** | ) | |
| **BLUE SHIELD HEALTHCARE** | ) | |
| **PLAN OF GEORGIA INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## AMENDED COMPLAINT

Plaintiff Christopher Mohler herein sets forth the allegations of his Complaint against Defendant Anthem Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.

## PRELIMINARY ALLEGATIONS

1.     Jurisdiction: This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.  This action is brought for the purpose of obtaining benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan.  Plaintiff seeks relief, including but not limited to: payment of benefits, injunctive relief, statutory penalties, prejudgment and post-judgment interest, and attorneys' fees and any other related costs.

2.     Plaintiff Christopher Mohler is a resident of the City of Lafayette, Indiana and an employee at Butler Aerospace and Defense ("Butler").

3.     Plaintiff was at all relevant times a covered participant under an employee welfare benefit plan regulated by ERISA and pursuant to which Plaintiff is entitled to health care benefits.

4.     Health benefits under the Plan were administered by Defendant Anthem Blue Cross and Blue Shield Healthcare Plan of Georgia ("Anthem" or "Defendant").

5.     Plaintiff is informed and believes that the Defendant is a corporation with its principal place of business in the State of Georgia, it is authorized to transact and transacting business in this judicial district, the Northern District of Georgia, and can be found in the Northern District of Georgia.

6.     Plaintiff was at all times relevant a covered beneficiary under the Plan.

7.     The claims at issue herein were specifically administered in this judicial district.  In conjunction with the residency of the Defendant, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (special venue rules applicable to ERISA actions).

## CLAIM FOR RELIEF FOR DENIAL OF BENEFITS

8.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

9.     Plaintiff is on the autism spectrum having been previously diagnosed with Asperger's syndrome.  Since 2006, Plaintiff has suffered from acute anxiety and inattentiveness.

10.     Christopher Mohler is a hero.  He has spent a lifetime with autism and ADHD; forced to tolerate anxiety; lacking in fine motor skills; suffers from a

misunderstanding of pragmatic language; needs gross motor and physical coordination; and, is easily distracted.

11.    Nevertheless, Christopher made himself an airframe design engineer. A career he obtained via a degree from one of the country's leading engineering institutions, Purdue University.

12.    Christopher has been working as an airframe design engineer at Butler Aerospace and Defense Systems for six years.

13.    Christopher lives an admirable life; he works; and through his efforts in the workplace, has obtained health insurance.

14.    Christopher is an extremely dedicated employee, normally arriving early to work and usually requires tremendous urging by his parents to take a sick day.

15.    Christopher did this through hard work, aided by exceptional intelligence.  He devoured literature at a young age that many of his typical peers struggled to read.

16.    In fact, his vocabulary and use of sentences at an early age surpassed all the so-called "norms" for his age (over 900 words in his vocabulary at 19 months of age, and 3-5 word sentences by 21 months of age).

17.    Motivated by meeting an astronaut, Christopher would eventually obtain an internship at NASA.

18.    Although Christopher is extremely intelligent, he struggled with social etiquette and norms as a child.

19.    To illustrate, Christopher had a hard time taking conversational turns with others or changing topics when the listener appeared to lose interest.

20.    He also experienced difficulty reading another person's body language.

21.    As Christopher grew older, his parents used concrete verbal cues to advise him, "You're going down the wrong road" or it's "non-negotiable."

22.    He learned that when he heard these expressions that he needed to immediately modify his behavior.

23.    Plaintiff was and has been treated by his physician, Dr. Edward B. Aull, with name-brand prescriptions of Wellbutrin, Concerta, and Focalin to combat this anxiety and inability to pay attention.

24.    Plaintiff has been taking these aforementioned name-brand medications for over 14 years.

25.    Defendant approved benefits for the Plaintiff's medication Wellbutrin since initial authorization from Dr. Aull's prescribing as medically necessary.

26.    Christopher was prescribed several generic medications before Wellbutrin, including Bupropion, which is a generic name for Wellbutrin.

27.    Dr. Aull began prescribing Wellbutrin in May of 2007 due to the side-affects of the generic, Bupropion.

28.    Christopher ultimately could not take generic Bupropion due to persistent Diarrhea and severe stomach cramps.

29.    Dr. Aull noted that Christopher is able to hold down his job and perform fairly well; however, even with these name-brand medications his ability to concentrate and anxiety still persist.

30.    Defendant was made aware of these side effects via receipt of Dr. Aull's letters and application of Prior Authorization but nonetheless disregarded the medical necessity of Christopher's need of name-brand medications.

31.    The Plaintiff must take Wellbutrin daily to be able to adequately perform his job, free from side-affects, and function day-to-day without being overcome by anxiety.

32.    Wellbutrin is medically necessary for Christopher to accomplish his daily tasks as an airframe engineer, but also at home and in social situations, where his struggles persist, even with his name-brand medications.

33.     Christopher, through multiple prescriptions and experimentation without drugs, has not been able to successfully find a replacement for each one of the aforementioned name-brand medications.

34.     Christopher has had extreme difficulty with generic Concerta: increased irritability, stress, increased anxiety, borderline insubordination, decreased focus because his generic does not work for very long and it wears off at least one and a half hours sooner than brand-name.

35.     Christopher has also tried generic Wellbutrin and incurred immediate severe stomach pains causing him to run to the bathroom multiple times at work.

36.     Furthermore, the generic Wellbutrin (Adhansia) upsets Christopher's GI tract and the Zoloft – that helps him fall asleep (due to his depression and anxiety) leaves him currently feeling "hung-over" the next day at work.

37.     Also, to illustrate Plaintiff once had stomach cramps from Thursday to Saturday afternoon after taking one single generic Wellbutrin pill.

38.     Christopher has difficulty falling and remaining asleep after taking Adhansia, which has made him tardy to work on multiple occasions.

39.     Plaintiff was then prescribed another medication, Clonidine, to assist him in falling asleep due to his increased anxiety since he is no longer on the name-brand Wellbutrin.

40.     Despite Plaintiff's serious disabilities, Christopher Mohler can drive to and from his workplace.

41.     On workdays, Christopher always takes his medications when he first gets up and before he starts getting ready for work.  He thinks it important to make sure his medications area active before he tries to drive his car.

42.     Yet in November of 2020, due to taking the generic medications, Plaintiff could not turn radio on in his car while driving for fear might get distracted and cause a wreck.

43. This left Christopher looking pale and "at a loss" when talking and listening to others.

44. Talking on the phone, a job duty, has at times been challenging for Christopher and his anxiety increases, as he must communicate often with remote co-workers to perform his job.

45. Christopher is depressed because he believes he's not working as efficiently or as effectively on the Adhansia as he was when he was on the brand Concerta.

46. Christopher can tell the difference and is keenly aware of the importance of doing his job at high levels of performance.

47. Oftentimes Christopher senses that his medication is wearing off or not working as well, which causes him to feel more anxious or depressed.

48. The neglect of the Defendant has caused major anxiety and depression, which has not only caused financial harm but has irreparably damaged Christopher's livelihood.

49. Defendant knows well about the problems Christopher has with generic versions of his medications.

50. The Defendant previously granted requests for four years as well as similar requests for Plaintiff's additional prescriptions of brand Concerta and Focalin.

51. Since Defendant's initial denial of benefits, the Plaintiff has paid over $20,000 out-of-pocket for his name-brand medications.

52. On January 14, 2020, Dr. Aull faxed the first Prior Authorization to the Defendant along with a supporting letter establishing the medical necessity of the Plaintiff's necessity of staying on name-brand Wellbutrin and the very serious adverse effects Christopher experienced in the past when other medications were tried.

53.    The letter also requested the DAW (Dispense as Written) brand penalty be removed and that a lower Tier Designation be applied.

54.    On January 27, 2020 Defendant's representative contacted Dr. Aull's office stating Prior Authorization was not necessary for name-brands Wellbutrin, Concerta, or Focalin.

55.    Additionally, the Defendant's representative stated it had submitted a trial claim for all three medications through April and all were accepted.

56.    The following day Plaintiff received a letter from Defendant stating that Defendant would not cover Plaintiff's Wellbutrin or Concerta after April 1st, 2020.

57.    On February 21, 2020 Plaintiff submitted a second letter from Dr. Aull addressed to Defendant requesting an appeal of Defendant's decision not to remove DAW penalty and/or lower Tier Designation.

58.    On May 15, 2020 Plaintiff placed multiple phone calls to Defendant attempting to obtain any info regarding why Chris' appeal had been denied; however, no reason was given.

59.    During the initial submission of the appeal Defendant intentionally began asking for unnecessary and irrelevant information, including, bizarrely *what was the hospital's name, address, phone number, the Tax ID number, and whether Plaintiff was seen on an in-patient or out-patient basis*.

60.    On May 26, 2020 Plaintiff subsequently placed a phone call to the pharmacy number on back of his insurance card and was informed by a representative that Defendant would fax two other forms to Dr. Aull that he needed to fill out.

61.    These two forms included a DAW Penalty Exemption form and the Tier Exemption form along with Prior Authorization forms.   The Defendant's representative also suggested Dr. Aull could call for a peer-to-peer review.

62.     The Defendant then obstructed Dr. Aull from attempting to conduct a peer-to-peer review.  There were several phone calls placed and no one was ever available at the number the Defendant provided.

63.     The Defendant did not process this request and asked Dr. Aull to instead call Butler's Human Resource Department ("HR").

64.     On June 2, 2020 Plaintiff received a letter from the Defendant granting Prior Authorization approval for Plaintiff's medically necessary prescription of name-brand Wellbutrin for the duration of 6/2/20-6/21/21.

65.     In June 2020 an Expedited Appeal for Wellbutrin was submitted by Dr. Aull to the Defendant along with his letters dated 1/23/20, 2/21/20, and 5/19/20, in addition to the DAW Penalty form.

66.     However, the Defendant never sent a Tier Exception form to Dr. Aull's office.

67.     Dr. Aull's office requested that the Defendant send them this form several times but the Defendant ignored these requests.

68.     On June 26, 2020 the Defendant denied the Expedited Appeal stating the Plaintiff did not qualify but instead would review it as an appeal for the DAW to be removed.

69.     Plaintiff never directly received the letter from the Defendant documenting the denial.  Plaintiff did however receive a copy of it two months later from Dr. Aull.

70.     Butler HR relayed to Plaintiff that the Defendant falsely claimed it had never covered Plaintiff's three brand prescriptions in the past.

71.     Butler HR acknowledged to Plaintiff that the Defendnat was incorrect because documentation showed proof of Plaintiff's prescriptions from the previous year showing that the DAW penalty had been removed and a lower Tier designation indeed had been granted.

72.    On August 7, 2020 the Defendant then informed Plaintiff his name-brand medications were previously "covered in error."

73.    The Defendant had also previously informed the Plaintiff the same prescriptions during 2017 were also "covered in error" despite the fact that the name-brand medications had indeed been covered.

74.    On August 27, 2020 Plaintiff received an E-mail from HR stating the appeal was denied and that the Defendant relied on its contract having a DAW penalty on Physician and Member requested brands and the Plan benefit would not allow the DAW penalty to be waived.

75.    The Defendant intentionally made Christopher submit necessary documentation during the appeal process, but then ultimately relying on the aforementioned argument surround contract language.

76.    The Defendant refused to follow its Plan language and denied Christopher a right to adequately appeal its decision.

77.    The Defendant decided Christopher Mohler would never have a chance to a successful claim of medically necessary medications.

78.    On August 29, 2020 Plaintiff requested copy of the Evidence of Coverage ("EOC") from Butler HR.  On August 31, 2020 Plaintiff received an e-mail from HR with an EOC letter from Defendant, however it was an incorrect document.

79.    On September 4, 2020 Plaintiff again called the Defendant's Customer Services department to request the EOC; but again, was denied any assistance further thus inhibiting him from accessing his entitled Plan benefits.

80.    Plaintiff was finally able to obtain contact with a representative of the Defendant regarding the EOC; however, the representative ultimately sent the EOC *for the wrong Plan*.

81.     With the cut-off date for Second Voluntary Appeal rapidly approaching, on September 4, 2020 Plaintiff requested a Second Voluntary Appeal and sent it to the Defendant's Grievances and Appeals Department along with other supporting documents and letters from Dr. Aull.

82.     Predictably, Plaintiff again called the Defendant's Customer Service number and asked to be transferred to Grievance and Appeals Department and the call was either immediately cut off or a representative of the Defendant would direct the Plaintiff to Butler HR.

83.     Plaintiff received a letter from the Defendant dated 9/9/20 (received on 9/16/20) acknowledging receipt of inquiry stating: "[a]fter review we are not showing any claim for the DOS hence please resubmit the claim with claim correct details and DOS."

84.     On September 9, 2020 Plaintiff finally received a the EOC from Butler HR.  Noticeably, the EOC stated that Plan Administrators have 30 days from the plan participants request to furnish the EOC to the beneficiary.

85.     The Defendant exceeded the 30-day limit due to the Defendant's inability to prudently act in the best interest of the beneficiary, Christopher.

86.     Plaintiff did receive a letter from the Defendant acknowledging receipt of Second Voluntary Appeal.

87.     On September 16, 2020 Plaintiff spoke with Butler HR in which he relayed the Defendant was again requesting for dates of service documentation for Second Voluntary Appeal, which Plaintiff had already sent.

88.     By September 29, 2020, three weeks later, Plaintiff still had not received any update on what additional information the Defendant needed to process Christopher's Second Voluntary Appeal.

89.     On October 2, 2020 Plaintiff received a letter dated 9/28/20 from the Defendant saying the Voluntary Second Appeal was denied, specifically stating:

> "We received a request for an appeal for: DAW (brand) penalty fee to be waived for medication Wellbutrin XL 300mg tablet ER 24h. The final coverage decision on this matter was sent to you in a letter dated September 8, 2020."

90.   However, the Defendant had not sent any letter dated 9/8/2020.

91.   Therefore, the Defendant decided it would not give Christopher a reason for consider the appeal or any subsequent information denial but instead rely on a former decision.

92.   The Defendant effectively decided to arbitrarily decide Christopher's fate with no actual review or consideration of his latest appeal submission.

93.   Christopher followed each process diligently for the appeal as outlined in the Plan document, however, in the end, the Defendant decided it would make a rule on its own and create its own process - without any regard to the Plan and Christopher's health status or livelihood.

94.   Plaintiff also sought clarification from HR on whether the Non-Formulary Brand Appeal Request option was another available remedy, but none was given.

95.   On October 7, 2020 Plaintiff received an E-mail from HR reiterating contract language prohibits exemption of non-formulary medications, ultimately stating:

> "According to Anthem, although the medications are not on the formulary, the exception would not be allowed due to the brand penalty within the contract between Butler Aerospace and Anthem. Based on the contract, there is a brand penalty within the contract if there is a generic prescription available."

96.   On October 9, 2020 Butler HR called and Plaintiff asked if the Independent Review Group determined whether Christopher qualifies for the Brand Exception Appeal, and whether the Defendant would honor it or would they continue to say the brand penalty stays in place, but no answer was given.

97.   Christopher also contacted a representative from the Pharmacy Management Company ("Ingenio") inquiring if the "contract language" again precluded him from submitting a Non-Formulary Brand Request, however the representative had no answers and encouraged Christopher to file the aforementioned request.

98.   On November 18, 2020 Plaintiff sent a Non-Formulary Brand Request Appeal to Grievances and Appeals Committee.

99.   Again, Anthem sent a letter dated 11/29/20 requesting, of all things, Date of Service information, which Plaintiff had already sent.

100.   On December 4, 2020, Plaintiff received a letter dated 11/20/2020, informing Christopher his Non-Formulary Brand Request had been denied, stating:

"The final coverage decision on this matter was sent to you in a letter dated September 8, 2020."

101.   Christopher is ultimately left wondering what the purpose of the EOC if "contract language" precludes him from appropriately accessing his Plan and benefits.

102.   In an email after the denial, a representative from Ingenio shared:

"Below is what I would recommend to the member.  The last option for the member to try is to file for a Formulary exception through the grievance and appeals team.  If approved this would allow the NF Wellbutrin XL to process as a Tier three medication.  This information should be discussed in their EOC as well so you can reference that or send them a copy if they have questions on how to submit for a formulary exception."

103.   When in fact, the Defendant had already denied this request – leaving Christopher astounded.

104.   Finally on December 19, 2020, Christopher received a document dated 12/4/2020, again stating:

"We carefully reviewed your appeal and pharmacy benefits. We were advised, 'this group and member have a DAW (dispense as written) penalty on Physician AND Member requested brands. Unfortunately, we are unable to change the previous coverage decision."

105.   Christopher is left demoralized and defeated, unsure where he stands with any request or how he will obtain his medication so he can continue to perform his job and attempt living as normal of a life as he can.

106.   Ultimately the Defendant created a system making it impossible for Christopher to access his Plan and health benefits, yet alone act in his best interest.

107.   The Defendant wrongfully denied Plaintiff's claim for prescription benefits, in the following respects, among others:

(a)   Failure to pay medical benefit payments due to Plaintiff at a time when the Defendant knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan;

(b)   Failure to provide prompt and reasonable explanations of the bases relied on under the terms of the Plan documents, in relation to the applicable facts and Plan provisions, for the denial of the claims for medical benefits;

(c)   After the claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect the claims along with an explanation of why such material is or was necessary;

(d)   Failure to pay for the level of care which the Defendant determined was medically necessary; and

(e)   Failure to investigate the merits of the claims properly and adequately and/or provide alternative courses of treatment.

108.   Plaintiff is informed and believes and thereon alleges that the Defendant wrongfully denied Plaintiff's claims for benefits by other acts or

omissions of which Plaintiff is presently unaware, but which may be discovered in this litigation and which Plaintiff will immediately make the Defendant aware of once said acts or omissions are discovered by Plaintiff.

109.   Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on his part to be performed.

110.   As a proximate result of the denial of medical benefits, Plaintiff has been damaged in the amount of all of the medical bills incurred, in a total sum to be proven at the time of trial.

111.   As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by the Defendant.

112.   Due to the wrongful conduct of the Defendant, Plaintiff is entitled to enforce his rights under the terms of the Plan.

## REQUEST FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant as follows:

113.   The Court rightfully order an injunction requiring the Plan to pay for the Plaintiff's name-brand prescriptions;

114.   Provide a waiver for future name-brand medications as outlined in this Complaint;

115.   Payment of health insurance benefits due to Plaintiff under the Plan;

116.   Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

117.   Payment of prejudgment and post-judgment interest as allowed for under ERISA; and,

118.  For such other and further relief as the Court deems just and proper.


RESPECTFULLY SUBMITTED

/s/ Michael F. Braun

_____

MICHAEL F. BRAUN (GA Bar No.: 079842)
5016 Centennial Boulevard, Ste. 200
Nashville, Tennessee 37209
(615) 378-8942
Fax: (629) 255-4445
mfb@braun-law.com